JOHN FRANKLIN LOVE, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 24727

April 27, 1995                                        893 P.2d 376

*Richard F. Cornell,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Scott W. Doyle,* District Attorney, *Michael P. Gibbons,* Chief Deputy District Attorney, and *Kristine L. Brown,* Deputy District Attorney, Douglas County, for Respondent.

546

## OPINION

*Per Curiam:*

Appellant John Franklin Love was charged with two counts of trafficking in a controlled substance and two lesser counts of possession of a controlled substance. At trial, Love admitted to possession, but defended the trafficking charges on the ground that he was a procuring agent for his friend Peggy Bertozzi. The district court refused to instruct the jury that the prosecution has the burden of disproving procuring agency beyond a reasonable doubt and instructed the jury that the procuring agent defense did not apply unless Bertozzi was acting as an informant when she initiated the drug transaction with Love. For the following reasons, we conclude that this constitutes error and reverse Love's conviction.

### FACTS

Love was arrested on November 22, 1992, following two "sales" of methamphetamine to Bertozzi. He was charged with two counts of trafficking in a controlled substance, in violation of NRS 453.3385, and two lesser included counts of possession of a controlled substance in violation of NRS 453.336.

During the third week of November, 1992, Bertozzi asked Love if he could provide her with a quarter ounce of methamphetamine to sell to her friend Bob Swee. Love agreed. Love initially told Bertozzi that the drugs would cost $200; however, in their last conversation, Love offered to let her keep the entire $500 that she would receive from Swee. This was the first time Bertozzi had received methamphetamine from Love.

On November 22, 1992, Bertozzi asked David Koteles to deliver a package of methamphetamine to Swee and collect $500

from him. Koteles had known Bertozzi for about ten years and had known her to sell drugs on occasion in order to support herself and her children. As a result of Bertozzi's request, Koteles called the police and met with Tri-Net Detective Paul Howell. Detective Howell instructed Koteles to pick up the drugs from Bertozzi, stand by for a telephone call from Swee, and meet Swee at the local supermarket. Koteles did as instructed, and Swee was arrested.

Subsequently, the Tri-Net officers went to Bertozzi's home and arrested her. She agreed to cooperate in exchange for leniency from law enforcement officials. Bertozzi told the officers that her source of the 6.9 grams of methamphetamine she sold to Swee was Love.

Bertozzi was instructed to call Love and was briefed several times on what to say to him. Detective Howell's purpose was twofold: first, to verify that Love was indeed the source of the methamphetamine in question, and second, to "set up" Love on a controlled purchase. Bertozzi called Love while Detective Howell listened to the conversation. Bertozzi then told Love, "Everything went good today. I got the money for the crank." Love replied, "That's good." Bertozzi then stated that her friend liked the crank that she got for him and wanted more. Love replied, "Well, how much?" Bertozzi stated, "Same thing." Love replied, "That's no problem. I've got that right now." Bertozzi then stated, pursuant to previous instructions from Detective Howell, "Okay. I am going to call my friend. He is at the Carson Valley Inn, and I will call you back in ten minutes. I will let you know when to deliver." Approximately five minutes later, Love arrived at Bertozzi's residence, at which time he was placed under arrest. Upon conducting a search, the officers removed two plastic baggies of methamphetamine totaling 11.6 grams.

At trial, Love admitted to possession but attempted to establish the procuring agent defense to the charges of trafficking. Accordingly, Love introduced evidence to show that he acted solely for Bertozzi in obtaining the methamphetamine and that he did not benefit from the transactions in any way.

Love testified that a man named Spanky was the source of the methamphetamine in this case. Love testified that after he told Spanky that Bertozzi was a friend of his who was in financial straits, Spanky gave Love the first quantity of methamphetamine as a gift. Spanky dropped off the methamphetamine at Love's house. Bertozzi picked the drugs up there and then sold the drugs to Swee. Love stated that Spanky gave him another package of methamphetamine a few days later, even though Love did not specifically ask for it. Immediately following this, Bertozzi, at the request of the police, called Love.

The jury found Love guilty of the two trafficking counts and not guilty of the two lesser included possession counts. The district court sentenced Love to a term of imprisonment of fourteen years total, seven years for the first count of trafficking and a consecutive seven-year term for the second. Love appeals.

## DISCUSSION

*The State's burden in disproving Love's procuring agent defense.*

Love asserts that the district court erred in failing to instruct the jury that the State had the burden of disproving Love's procuring agent defense and in instructing the jury that the procuring agent defense does not apply unless the drug sale is initiated by a police informant. We agree.

The seminal Nevada authority on the procuring agent defense is Roy v. State, 87 Nev. 517, 489 P.2d 1158 (1971). In *Roy,* we held that it is fundamental that a person cannot be found guilty of being a "seller" of narcotics when he or she has not acted for the supplier, but rather, solely for the recipient. *Id.* at 519, 489 P.2d at 1159. Accordingly, we approved the instruction:

> "If you believe that Police Officer R. Baggett asked the defendant to get some marijuana for him and that the defendant thereupon undertook to act in behalf of Police Officer. Baggett rather than on defendant's own behalf, and in so doing, purchased the marijuana from a third person with whom the defendant was not associated in selling marijuana, and that defendant thereafter delivered the marijuana to Police Officer Baggett, the defendant is not a seller and cannot be convicted of the offense of selling marijuana."

*Id.* at 518, 489 P.2d at 1158.

Since *Roy,* we have established that the procuring agent defense in a prosecution for a sale of a controlled substance can be maintained only if the defendant was merely a conduit for the purchase and in no way benefited from the transaction. Thus, if a defendant receives part of the controlled substance involved in the transaction for his own use or any amount of money in consideration for the transaction, the defense of procuring agency is not available. *See* Dixon v. State, 94 Nev. 662, 584 P.2d 693 (1978). Additionally, the procuring agent defense is inapplicable when the crime is simply possession of a controlled substance. Buckley v. State, 95 Nev. 602, 604, 600 P.2d 227, 228 (1979).

However, the procuring agent defense *is* applicable to a trafficking case where the State charges trafficking on a theory of

possession, but the facts reveal a sale was contemplated. Hillis v. State, 103 Nev. 531, 535, 746 P.2d 1092, 1094-95 (1987).

The State charged Love solely with possession under the trafficking statute,[1] but the facts of the case clearly indicate that one sale occurred and that Love believed another sale would occur. Because Bertozzi initiated both sales and Love introduced evidence showing that he received no profit from the sales at issue, the district court properly gave a procuring agent instruction. Love argues, however, that the district court's failure to instruct as to who had the burden of proof with respect to the procuring agent defense constitutes reversible error.

Love offered an instruction that was modeled precisely on *Roy,* but ended with the additional words: "The burden is on the State to prove beyond a reasonable doubt that the Defendant is not a procuring agent." The district court rejected this instruction, stating that the burden is on the defendant to show that he is a procuring agent.

We have never specifically addressed the question of burden of proof regarding the procuring agent defense. In *Roy,* however, we cited the case of Smith v. State, 396 S.W.2d 876 (Tex. Ct. App. 1965), noting that "[i]ndeed, it may even be contended appellant might have requested a stronger instruction." *Roy,* 87 Nev. at 518-19, 489 P.2d at 1159. In *Smith,* the court found that the district court's refusal to read appellant's offered instruction constituted reversible error. The instruction at issue stated that if the jury found that the defendant was a procuring agent or if the jury had "reasonable doubt thereof," the jury must acquit the defendant.

Additionally, New York courts have held that where the evidence establishes the availability of the procuring agent instruction, the burden is on the state to disprove procuring agency beyond a reasonable doubt. The court in People v. Arnott, 533 N.Y.S.2d 470 (App. Div. 1988), stated:

> The agency defense is not an affirmative defense, but rather "may negate the existence of an element of the crime, namely, the sale or the intent to sell . . . [and] [a]ccordingly, the People are required to disprove agency beyond a reasonable doubt."

---

[1]NRS 453.3385 states, in relevant part:

[A]ny person who knowingly or intentionally sells, manufactures, delivers or brings into this state or who is knowingly or intentionally in actual or constructive possession of any controlled substance which is listed in schedule I . . . shall be punished, if the quantity involved:

    1.  Is 4 grams or more, but less than 14 grams, by imprisonment in the state prison for not less than 3 years nor more than 20 years and by a fine of not less than $50,000.

*Id.* at 472 (quoting People v. Matos, 506 N.Y.S.2d 225 (App. Div. 1986)).

Thus, Love maintains that the procuring agent defense is analogous to self-defense in a murder prosecution. In St. Pierre v. State, 96 Nev. 887, 620 P.2d 1240 (1980), we noted that because self-defense is justifiable, it negates the unlawfulness element of murder. Since self-defense disproves a fact essential to the offense, requiring the defendant to bear the burden of proving self-defense "'dilutes the State's own due process burden of proving, beyond a reasonable doubt, every element of the crime charged.'" *Id.* at 891, 620 P.2d at 1242 (quoting Kelso v. State, 95 Nev. 37, 41, 588 P.2d 1035, 1038 (1979)); *cf.* Barone v. State, 109 Nev. 778, 780, 858 P.2d 27, 28 (1993). Love argues that it is clear under *Barone* that his due process rights were violated.

The State asserts that the two instructions defining the procuring agent defense,[2] taken together with the two instructions regarding the State's burden of proof for the offenses charged, informed the jury that the State had to prove that Love was not a procuring agent.

We reject the State's argument because the jury instructions given conveyed the impression that the elements of the offense of trafficking and the defense of procuring agency were two completely separate issues. This is a result of the State having charged Love with trafficking based purely on possession: the procuring agent defense does not negate any element of the trafficking offense on which the jury was instructed. The jury was instructed that the elements of the crime of trafficking as charged were: (1) acts of actual or constructive possession; (2) knowledge on the part of the accused of the presence of the controlled substance and its narcotic nature; and (3) weight of the substance or mixture containing the substance of four or more grams, but less than fourteen grams. Since there is no mention of a "sale" in the

---

[2]Jury Instruction Number 16 read:

If you believe that the defendant was acting solely as an agent of the buyer and possessed a trafficking amount of controlled substance clearly incidental to a contemplated sales transaction initiated by an informant, then you may find that the "procuring agent" defense applies to the charge of trafficking.

Jury Instruction Number 17 read:

The "procuring agent" defense applies only when the defendant is acting as an exclusive agent for the buyer. In order to fall within the "procuring agent" exception, the agent must have no direct interest in the contraband being sold. His function must be performed without any profit motive or benefit to himself. If he is in fact interested in the outcome either by ownership of the property or by an agency relationship with the seller, he fails by definition to be an agent for the purchaser.

instruction on trafficking, the jury could easily have concluded that the State had proven each and every element of the crime of trafficking beyond a reasonable doubt, especially since Love admitted to all of the named elements. The instructions as a whole therefore did not effectively inform the jury that Love's procurement defense entailed no burden of proof on his part, but placed the additional burden on the State to establish that Love had a profit motive or other direct interest when he obtained the drugs for Bertozzi.

Accordingly, we conclude that the district court's failure to instruct as to the burden of proof constitutes reversible error in this case. To hold otherwise would be at odds with our decision in *Hillis* and would allow the State to effectively eliminate the procuring agent defense by charging a defendant solely with possession under the trafficking statute, even when the facts of a case clearly reveal a sale occurred or was contemplated.

*The applicability of the procuring agent defense to a drug sale not initiated by one who is a police informant.*

The district court accepted a jury instruction from the State stating that the procuring agent defense applies only when the sales transaction is initiated by a person who is the State's informant at the time of such initiation. The court allowed the prosecutor to argue in her closing argument that the procuring agent defense did not apply to Count I because Bertozzi was not an informant at the time the transaction was initiated.

As Love argues, the procuring agent defense is a technical defense going to the *prima facie* element of "sale." Thus, its existence does not depend on whether or not the State had anything to do with initiating the transaction.[3] Though all of our cases involving the procuring agent defense dealt with buyers who were informants, we have never expressly nor impliedly indicated that the procuring agent defense is limited to situations where the buyer is acting as an agent of the State. *See* Paul Andre B. v. State, 108 Nev. 368, 830 P.2d 1344 (1992); Hillis v. State, 103 Nev. 531, 746 P.2d 1092 (1987); Roy v. State, 87 Nev. 517, 489 P.2d 1158 (1971); *see also* People v. Tower, 505 N.Y.S.2d 275, 276 (App. Div. 1986) (instructing the jury that a next-door neighbor and friend, not acting as an informant or undercover agent, could be a "buyer" for the purposes of the agency instruction).

The State's argument and the jury instruction were tantamount

[3]This is in contrast to the defense of entrapment, which is a prophylactic device designed to prevent police misconduct.

to denying Love the procuring agent defense with respect to Count I.[4]

*The applicability of the procuring agent defense when the defendant obtains the drugs from his source before the buyer requests the drugs.*

The State correctly argues that the procuring agent defense legally does not apply if the defendant already had possession of the drugs at the time the buyer requested delivery of them. The procuring agent defense rests on possession incidental to a transaction *initiated* by a third party. This element of initiation by a third party means that the defendant must not be in possession of the drugs at the time of the request. Thus, the procuring agent defense could not apply to the second transaction because Love had the drugs before Bertozzi even asked for them.

## CONCLUSION

We reverse Count I of Love's conviction, that based on the first transaction, due to the fact that the jury instructions effectively precluded Love from asserting a procuring agency defense, and remand to the district court. We affirm Count II of Love's conviction that was based on the second transaction, because Love already possessed the drugs at the time the sale was initiated so that the procuring agent defense cannot apply.

---

[4]We have considered the rest of Love's contentions and find that they are without merit.